UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES THREATT, NATASHA THREATT, and JANET MILLER, ) ) ) Plaintiffs, ) ) v. ) ) RESIDENTIAL CRF, INC., and/or ) CRF FIRST CHOICE, INC., ) ) Defendants. ) | CAUSE NO. 1:05-CV-117 |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Plaintiffs James Threatt, Natasha Threatt, and Janet Miller were each formerly employed as "12-7 Direct Care Staff" at group homes operated by Defendants Residential CRF, Inc., and/or its affiliate CRF First Choice, Inc. (together referred to herein as "CRF"). (Compl. ¶¶ 4, 6; Aff. of Lisa Achgill ¶ 5.)  In this suit, Plaintiffs allege that CRF violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., by failing to properly pay them for overtime. (Compl. ¶ 9.)  Currently, the Threatts and Miller are the only plaintiffs, but they also wish to proceed on behalf of other 12-7 Direct Care Staff similarly situated to them. (*Id*. ¶ 11.) Accordingly, they move to expand this suit into a "collective action" (Docket # 46) as contemplated by the FLSA.  For the reasons given below, the undersigned Magistrate Judge recommends that their motion be GRANTED IN PART and DENIED IN PART.  This Report and Recommendation is based on the following facts and principles of law.

## II. FACTS[1]

Prior to April 1, 2002, CRF Residential, Inc., operated group homes, located in Indiana, Florida, and New Mexico, for individuals with special needs due to mental infirmity.[2]  On April 1, 2002, CRF Residential, Inc., transferred to its affiliate, CRF First Choice, Inc., the portion of its Indiana operations for which it received compensation under the Indiana Medicaid program.  This contribution included all of the group homes (approximately thirteen) located in Fort Wayne, but excluded homes in other parts of Indiana which did not receive Medicaid reimbursement.  On December 31, 2003, CRF First Choice, Inc., sold all of its operations to a third party, REM Indiana Community Services II, Inc.[3]

Plaintiffs were each employed as 12-7 Direct Care Staff (the term "12-7" will be used herein when referring to a member of the 12-7 Direct Care Staff) at one or more of CRF's Fort Wayne group homes.  A 12-7's duties include assisting consumers with their activities of daily living, providing consumer companionship, and performing basic household tasks for the home. 12-7 Direct Care Staff work twelve hours per day for seven days in a row, and then have the next seven days off; they are then paid for eighty-four hours in each two-week period, eighty of those hours at regular rate and four hours at overtime rate.[4]  Prior to 2003, the workweek for 12-7

---

[1]The facts are drawn from various briefs and affidavits presented by the parties.  In the interest of brevity, the facts (which appear to be undisputed) are recited here without citation to the record.

[2]It appears from the record that CRF refers to these special-needs individuals as "consumers"; therefore, the Court will do the same. (*See* Br. in Opp'n to Certification at 10.)

[3]Mentor/REM-Indiana, Inc. (which is presumably an affiliate of REM Indiana Community Services II, Inc.) ("REM"), was originally named as a defendant in this suit, but all parties stipulated to its voluntarily dismissal on June 2, 2005. (Docket # 36.)

[4]CRF also employs "24-7 Direct Care Staff" who supervise the 12-7 Direct Care Staff.  These employees work twenty-four hour shifts for seven consecutive days, with an eight hour rest break at the group home each day, and then do not work for the next seven days.  Plaintiffs, however, have limited the proposed collective action to solely the 12-7 Direct Care Staff (i.e., those employees who regularly worked eighty-four hours in one week, but

2

Direct Care Staff varied (*see* Aff. of Dannie Tate; Aff. of Thomas Williams; Aff. of Marquetia Gatewood; Aff. of Natasha Dilworth); however, in late June 2003, CRF adopted a policy that its workweek for all 12-7 Direct Care Staff would uniformly run from Thursday to the following Thursday.

Plaintiffs contend that CRF denied them overtime pay by causing them to work eighty-four hours in one week, but only paying them for four overtime hours.  Plaintiffs further assert that many more 12-7 Direct Care Staff also believe they were wrongfully denied overtime pay and wish to opt in to this suit; in fact, twenty-five other employees have already placed signed consents in the record.[5] (*See* Docket # 33-35, 39, 41, 44, 50.)

### III. STANDARD OF REVIEW

The FLSA provides for an action "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  When an employee's suit is on behalf of "other employees similarly situated," it is known as a "collective" or "representative" action. *See Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004).  A collective action is different from the class action procedure set forth in Federal Rule of Civil Procedure 23; for instance, potential plaintiffs can only join a collective action by "opting in," whereas a class action will include any potential plaintiff who fails to "opt out." *Id.* (citing Fed. R. Civ. P. 23).

---

were paid for only four hours of overtime). (*See* Pls.' Reply to Defs.' Br. in Opp'n to Certification at 2.)

[5]CRF obliquely suggests that these twenty-five consents should be stricken because Plaintiffs did not provide notice to CRF of the content of the communications to potential plaintiffs; however, CRF asserts this merely in a footnote in their response brief without sufficiently developing an argument. (*See* Br. in Opp'n to Certification at 11 n.3.)  Therefore, if CRF desires to pursue this motion to strike, they are directed to file a separate motion, together with a developed argument and analysis supporting their contention.

In the majority of courts, a plaintiff who wishes to bring a collective action faces a two-step process.[6] *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). The first step is when a plaintiff seeks to provide notice to potential members of the collective action. At this notice stage, a plaintiff "need not satisfy the various elements of Rule 23 (such as numerosity, typicality, commonality, and so forth), but must only make a 'threshold showing' that she is 'similarly situated' to the employees she wishes to represent."[7] *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1012 (N.D. Ind. 2005). If the named plaintiff makes this showing, the court then "conditionally certifies" the action and enjoys the discretion to manage it in various ways, including ordering the defendant to produce the names and addresses of potential plaintiffs, and authorizing the named plaintiff to send notices to the putative class informing them of the suit and their opportunity to opt in. *Id.* (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-71 (1989)); *Champneys v. Ferguson Enters., Inc.*, No. IP 02-535-C, 2003 WL 1562219, at *5 (S.D. Ind. March 11, 2003).

The second step of the process occurs after discovery has been performed and is often triggered by the defendant moving to deny certification as a collective action. *Mielke*, 313 F. Supp. 2d at 762. Here, the court employs a stricter standard, generally considering the following three factors in determining whether the plaintiffs are similarly-situated: "(1) whether the

---

[6] Neither party here advocates for anything other than the two-step process.

[7] A handful of courts in other jurisdictions impose a second requirement on plaintiffs, in addition to the "similarly situated" requirement: evidence that "there are other employees . . . who desire to 'opt-in'" to the proposed class. *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1275 (M.D. Ala. 2004); *see also, e.g., Dybach v. Fl. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 897 (E.D. Tex. 1997). No court in the Seventh Circuit has explicitly adopted or rejected this extra requirement. *See Taillon v. Kohler Rental Power, Inc.*, No. 02 C 8882, 2003 WL 2006593, at *3 (N.D. Ill. April 25, 2003). However, there is no need for the Court to decide this question, as Plaintiffs have produced written consents of twenty-five additional employees who wish to opt in. (*See* Docket # 33-35, 39, 41, 44, 50.)

4

plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Id*.

The instant case involves the first step (i.e., the notice stage) of this two-step process.

## IV. DISCUSSION

Plaintiffs contend that CRF violated the FLSA when it caused them and other 12-7 Direct Care Staff in Indiana, Florida and New Mexico to routinely work eighty-four hours a week, but paid them for only four hours of overtime. *See* 29 U.S.C. § 207(a)(1).  They argue that since they and all of the other 12-7 Direct Care Staff "had the same jobs, worked the same or similar hours, [and] received pay (but not overtime)," they are similarly situated for purposes of a collective action under the FLSA. (Pls.' Reply to Defs.' Br. in Opp'n to Certification at 2.)

CRF does not deny that it failed to pay its 12-7 Direct Care Staff in excess of four hours of overtime wages when they worked eighty-four hours in a week.  Rather, its primary argument is that some, if not all, of the 12-7 Direct Care Staff are exempt from the FLSA, and because individualized, fact-specific discovery and analysis will be required to determine which employees fall within the applicable exemption, the suit is inappropriate for a collective action. Alternatively, CRF argues that if Plaintiffs' action is certified, it should be limited to exclusively 12-7 Direct Care Staff who worked for CRF in its Fort Wayne group homes.

This Court ruled on a similar circumstance recently in *Reich v. Homier Distributing Co., Inc.*, 362 F. Supp. 2d 1009 (N.D. Ind. 2005).  Reich, a former sales partner employed by Homier, brought suit against Homier, alleging that Homier failed to pay her overtime, and sought to certify it as a collective action. (*Id*.)  Homier, however, argued that individual discovery and

5

analysis for each sales partner would be required to determine which sales partners were exempt under the applicable FLSA exemption (i.e., the "loader exemption"), and thus the suit should not proceed as a collective action. (*Id*.)  The Court agreed with Homier and denied certification of the action, finding that the individual discovery required to ascertain the specific duties of each potential plaintiff so as to determine the applicability of the "loader exemption," would destroy "the economy of scale envisioned by the FLSA collective action procedure." *Id*. at 1015; *accord Pfaahler v. Consultant for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888, at *2 (N.D. Ill. February 8, 2000); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002); *Morisky v. Pub. Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000).

Similarly to *Reich*, here CRF argues that 12-7 Direct Care Staff fall within the "companionship services exemption" of the FLSA, which exempts from its scope:

> any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and limited by regulations of the Secretary).

29 U.S.C. § 213(a)(15).  The term "companionship services" is further defined as:

> those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.  Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services.  They may also include the performance of general household work: [p]rovided, however, [t]hat such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked . . . .

29 C.F.R. § 552.6.[8]  CRF argues that individualized discovery and analysis will be necessary to determine which of its 12-7 Direct Care Staff spent more than twenty percent of their time performing general household work, as each household, and each shift within the household, may allocate duties among 12-7 Direct Care Staff differently.  For example, as CRF tells it, one 12-7  may take a consumer on a community outing, while another 12-7 stays at the home to do the laundry; in other words, in any given week one 12-7 may spend 100% of his or her time engaged in companionship duties and qualify for the exemption, while another may spend 100% of his or her time performing general housework and fall outside the exemption. (*See* Br. in Opp'n to Certification at 10.)  To further complicate matters, CRF contends that the level of care required for each consumer varies, causing the duties of any given 12-7 to vary in accordance with the consumers to whom he or she is assigned.  Therefore, CRF argues the "layer[s] of extensive individualized discovery that will need to be undertaken for each consumer, each home and each employee" prohibits the suit from proceeding as a collective action. (*Id*.)

However, while both parties spend a significant amount of time speculatively arguing about whether this suit should proceed as a collective action, neither has provided much evidence to support their respective positions.  To support their argument that 12-7 Direct Care Staff in all of CRF's operations nationwide are similarly situated to them, Plaintiffs produced

---

[8]One district court in the Seventh Circuit found the current definition of "companionship services" unreasonable as applied to individuals employed as homemakers in elderly individuals' homes, declaring § 552.6 invalid "to the extent it exempts homemakers from [FLSA] coverage." *Harris v. Sims Registry*, No. 00 C 3028, 2001 WL 78448, at *5 (N.D. Ill. Jan. 29, 2001).  Other courts, however, have found the regulation enforceable on its face. *See, e.g., Coke v. Long Island Care at Home, Ltd.*, 376 F.3d 118, 129 (2nd Cir. 2004) (collecting cases).  Regardless, since the Court is simply examining whether or not this suit should proceed as a collective action at step one, the ultimate enforceability of § 552.6 is not pivotal for the Court's purposes here. *See Taillon*, 2003 WL 2006593, at *2 (finding that when defendant failed to produce sufficient basis for exemption at the notice stage, notice should be sent, as defendant would not be prejudiced if it is determined after discovery that defendant qualifies for an exemption).

five affidavits from various Direct Care Staff who worked in CRF's Fort Wayne group homes, and directed the Court to two prior lawsuits against CRF exclusively involving employees at CRF's Fort Wayne operations.[9] (*See* Aff. of Oji Washington; Tate Aff.; Williams Aff.; Gatewood Aff.; Dilworth Aff.); *see McCampbell v. Residential CRF, Inc.*, No. 1:04-CV-296, (N.D. Ind. filed June 4, 2004); *Harden v. Residential CRF, Inc.*, No. 1:04-CV-112 (N.D. Ind. filed March 12, 2004). Likewise, CRF has produced just one inconclusive, vague excerpt from an employee's deposition (an employee who is *not* a 12-7) from another suit against CRF in support of its contention that 12-7 Direct Care Staff duties may vary significantly and will require individualized discovery, and thus cannot be similarly situated. (*See* Dep. of Brenda McCampbell at 117.) This notable lack of evidence on CRF's part in support of its speculative theory is where CRF falls short.

  In examining the evidence presented by Plaintiffs, some of the affidavits actually lend support to CRF's contention that individualized discovery will be required, as (1) the affidavit submitted by Oji Washington states that he worked eighty-four hours one week, and thirty-six to forty-eight the next; (2) Dannie Tate's affidavit states that his pay period was Sunday to Saturday; (3) Thomas Williams's affidavit states that his pay period was Saturday to Sunday; and (4) Marquetia Gatewood's and Natasha Dilworth's affidavits state that their pay period was considered Monday to Sunday. Nonetheless, these variances are not fatal, as four of the affidavits and both of the prior lawsuits do consistently allege one particular theme – that the named CRF Fort Wayne employee worked eighty-four hours in a week, and received only four

---

[9]Plaintiffs' counsel acknowledged at oral argument that the employees who produced the affidavits were all employed at CRF's Fort Wayne group homes.

hours of pay at overtime rate. *See Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1996 (11th Cir. 1996) (stating that plaintiffs need only show that their positions are similar, not identical); *see also Veerkamp v. U.S. Security Assocs., Inc.*, No. 1:04-CV-49, 2005 WL 775931, at *2 (S.D. Ind. March 15, 2005) (finding variances among affidavits insufficient to defeat motion for certification where each affidavit alleged the same early start requirement for employees). At this notice stage where Plaintiffs carry only a modest burden, CRF's vague, unsupported assertion that duties performed by 12-7 Direct Care Staff *may* be allocated in a manner which *may* cause some 12-7 Direct Care Staff to fall within the FLSA's "companionship services exemption," and thus highly individualized discovery will be required, is patently insufficient to defeat the evidence produced by Plaintiffs supporting that the 12-7 Direct Care Staff, at least those employed in Fort Wayne, are similarly situated.

In contrast, however, a stark void exists when it comes to evidence sufficient to support Plaintiffs' request for a nationwide collective action. For example, Plaintiffs have not submitted job descriptions, CRF policy manuals, nor any affidavits of CRF employees who worked anywhere other than Fort Wayne. In fact, Plaintiffs have offered absolutely nothing more than *mere speculation* that all of CRF's 12-7 Direct Care Staff throughout Indiana, Florida and New Mexico worked the same schedule as CRF's Fort Wayne 12-7 Direct Care Staff. Thus, the Court finds that Plaintiffs have utterly failed to carry their modest burden with respect to showing that all of the 12-7 Direct Care Staff nationwide are similarly situated to the named Plaintiffs.[10] *See Veerkamp*, 2005 WL 775931, at *5 (finding that five affidavits from employees outside of

---

[10] While Plaintiffs did not contemplate a statewide action, the Court finds no basis upon which to certify a statewide collective action either, since all of the evidence produced by Plaintiffs arises exclusively from Fort Wayne employees.

Indiana were insufficient to support a nationwide collective action); *see generally Grayson*, 79 F.3d at 1097 (stating that plaintiffs bear the burden of demonstrating a "reasonable basis" for proceeding with a collective action, which can be shown by "detailed allegations supported by affidavits").

Accordingly, the undersigned Magistrate Judge will recommend that Plaintiffs' motion be GRANTED IN PART and DENIED IN PART, as their collective action is recommended for certification solely with respect to a class composed of the 12-7 Direct Care Staff employed in CRF's Fort Wayne group homes during the time period beginning April 1, 2002, and ending December 31, 2003.[11]

## V. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that Plaintiffs' motion for certification of FLSA collective action (Docket # 46) be GRANTED IN PART and DENIED IN PART, as their collective action is recommended for certification solely with respect to a class composed of the 12-7 Direct Care Staff employed in CRF's Fort Wayne group homes during the time period beginning April 1, 2002, and ending December 31, 2003.  The undersigned Magistrate Judge further recommends that Defendants be directed to provide Plaintiffs with the names and addresses of the putative class members, and that Plaintiffs be directed to submit a proposed notice to the Court for its review and approval prior to contacting

---

[11] CRF argues that its employees prior to April 1, 2002 (when CRF First Choice, Inc., assumed the Fort Wayne operations) will be barred from this action, as the maximum statute of limitations under the FLSA is three years and runs from the date a plaintiff files his consent to opt in with the Court. *See* 29 U.S.C. § 255; *Harkins v. Riverboat Servs., Inc.*, No. 99 C 123, 2002 WL 32406581, at *2-3 (N.D. Ill. May 17, 2002), *aff'd,* 385 F.3d 1099 (7th Cir. 2004).  CRF further argues that since REM employed the Fort Wayne 12-7 Direct Care Staff after December 31, 2003, and REM was voluntarily dismissed from this suit, 12-7 Direct Care Staff commencing their employment after December 31, 2003, should also be excluded from this action.  The Court agrees that CRF's temporal limitations are reasonable, and apparently Plaintiffs do as well, as they did not challenge them in their reply.

potential plaintiffs.

The Clerk is directed to send a copy of this Report and Recommendation to Plaintiffs and Defendants.[12]  NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239 (7th Cir. 1996).

Enter for this 12th day of August, 2005.

/S/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge

---

[12] The Clerk is further directed to resdesignate the caption of this case as "James Threatt, Natasha Threatt, and Janet Miller, on behalf of themselves and others similarly situated," as currently the caption incorrectly lists as plaintiffs the individuals who have consented to opt in upon certification as a collective action.