UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES THREATT, NATASHA THREATT, and JANET MILLER, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CAUSE NO. 1:05-CV-117 |
| RESIDENTIAL CRF, INC., and/or CRF FIRST CHOICE, INC., ) ) ) | |
| Defendants. ) | |

**OPINION AND ORDER**

On August 29, 2005, Defendants filed a motion that seeks to strike the consent forms filed by Plaintiffs of those individuals purporting to opt-in as plaintiffs to this collective action. (Docket # 57.) In the motion, Defendants argue that Plaintiffs (1) failed to inform Defendants of their intent to notify potential class members, (2) neglected to provide Defendants with the proposed language of the notice, and (3) filed the consent forms prior to obtaining leave from the Court to do so. (*Id*.) Plaintiffs, however, oppose Defendants' motion, arguing that they did not send written notice to these potential plaintiffs; rather, they contend the filed consent forms are simply the result of potential plaintiffs directly contacting Plaintiffs' counsel and insisting to be included in the action after they informally heard about the dispute. (Aff. of Christopher Myers ¶¶ 2-4.) The Court finds Plaintiffs' arguments persuasive and, for the reasons stated herein, will DENY Defendants' motion.

On February 23, 2005, Plaintiffs James Threatt, Natasha Threatt, and Janet Miller filed a complaint in the Allen Superior Court "on behalf of themselves and others similarly situated,"

alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by failing to properly pay them for overtime. (Compl. ¶ 1.)  On March 31, 2005, Defendants removed the action to this Court, and on June 6, 2005, all parties stipulated to dismiss Defendant REM Indiana Community Services II. (Docket # 2, 38.)  This action was conditionally certified as a collective action under the FLSA on August 31, 2005, by Judge William C. Lee, with respect to a class solely composed of the 12-7 Direct Care Staff employed in Defendants' Fort Wayne group homes during the time period beginning April 1, 2002, and ending December 31, 2003. (Docket # 58.)  In his August 31 Order, Judge Lee instructed Plaintiffs to "submit a proposed notice to the Court for its review and approval prior to contacting potential plaintiffs." (*Id.*)

Notwithstanding the foregoing, as early as May 27, 2005, long before Judge Lee conditionally certified the class, Plaintiffs began filing consent forms of individuals who desire to opt-in to the action, each purportedly according to the consent form's language "an employee or past employee of Residential CRF, Inc., and/or CRF First Choice, Inc., (and its successor-in-interest Indiana Mentor/REM-Indiana, Inc.) . . . seeking overtime pursuant to the [FLSA]." (Docket # 33-35, 39, 41, 44, 50, 56, 59.)  Neither Defendants nor the Court were notified of Plaintiffs' intent to file the consent forms or provided with an opportunity to review the language of the consent form prior to its use. (Mot. to Strike Pls.' Notice and Consent Forms at 1.)  Ultimately, Plaintiffs filed the consent forms of twenty-six potential plaintiffs prior to the action's certification as a collective action and two additional consents thereafter. (Docket # 33-35, 39, 41, 44, 50, 56, 59.)  Finally, on September 13, 2005, Plaintiffs filed a proposed form of notice and consent for Defendants' review in compliance with Judge Lee's August 31 Order.

2

(Docket # 60, 62.)

In *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982), the Seventh Circuit held that it was improper for the named plaintiff in an FLSA collective action to send out notices to potential plaintiffs "without first communicating to the defendant's counsel his intention to do so, so that the defendant's counsel would have an opportunity to verify the accuracy of the notice and, if he wished, to move for an order amending the notice or limiting its distribution in an appropriate manner." While this duty is not expressly created by rule or statute, it is inferred from Section 16(b) of the FLSA and Rule 83 of the Federal Rules of Civil Procedure, which provides that "in all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with" the Federal Rules of Civil Procedure. *Woods*, 686 F.2d at 580. This modest inferred duty exists because once an FLSA collective action is commenced, "the defendant has a vital interest in, and the court a managerial responsibility regarding, the joinder of additional parties . . . ." *Id.*

In the instant action, Defendants argue that in using and filing the consent forms as they did, Plaintiffs failed to comply with Seventh Circuit case law requiring that they notify Defendants of their intent to send notice to potential plaintiffs and afford Defendants with "an opportunity to verify the accuracy of the notice." *See id.* As Defendants see it, while Plaintiffs may have indeed refrained from sending *written* notice to potential plaintiffs, clearly notice of some sort was communicated to potential class members by Plaintiffs, or the individuals would not have known to request to join the suit. Moreover, it is evident through Plaintiffs' counsel's own admission (*see* Myers Aff. ¶ 2) that these communications occurred after the suit was filed, rather than before. *See Woods*, 686 F.2d at 580 (emphasizing specifically that notice conveyed

3

after a suit is filed, rather than before, is improper if done without first communicating to defendant's counsel).

However, in opposing Defendants' motion, Plaintiffs argue that the rule in *Woods* does not apply under the instant circumstances. They emphasize that, in compliance with Judge Lee's August 31 Order, written notices have not yet been sent to potential plaintiffs. Rather, Plaintiffs explain that these filed consent forms are merely the result of potential plaintiffs directly contacting Plaintiffs' counsel and insisting to participate in the action after they informally heard about the dispute. Accordingly, they believe that Defendants are attempting to extend the holding in *Woods* too far in applying it to the instant situation, where no written notices have been sent. After examining the relevant authority, this Court is inclined to agree.

Both *Woods* and *Heitmann v. City of Chicago*, No. 04 C 3304, 2004 WL 1718420 (N.D. Ill. July 30, 2004), another case cited by Defendants in support of its position, entailed situations where written notice of the collective action was sent in mass to potential class members via direct mail or newsletter. Here, the facts are readily distinguishable, as the evidence indicates that a potential plaintiff was sent a consent form *only after* that potential plaintiff had first informally heard about the case and then contacted Plaintiffs' counsel and requested to join the suit. While indeed this Court has the responsibility and discretion to manage collective actions, *see Reich v. Homier Distrib. Co.*, 362 F. Supp. 2d 1009, 1012 (N.D. Ind. 2005), stymieing Plaintiffs from informally discussing their case with others potentially similarly situated would seem to extend this authority too far. Defendants have produced no evidence indicating that a potential plaintiff was sent a consent form, or some other type of written communication or notice from Plaintiffs or Plaintiffs' counsel, until *after* he or she had first initiated contact with

4

Plaintiffs' counsel and requested to join the action.  Thus, the *Woods* rule does not appear to apply here.

Instead, persuasive guidance can be found in *Wertheim v. State of Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603552, at *8 (D. Ariz. Sep. 30, 1993).  In *Wertheim*, the defendants moved to strike the consent forms of potential plaintiffs in an FLSA collective action because they were filed before the court authorized and approved the form of notice to the class. *Id*.  The court, however, disagreed, pointing to Section 256(b) of the FLSA, which requires only that a "written consent [be] filed in the court in which the action was commenced." *Id*. (quoting 29 U.S.C. § 256(b)); *see also* 29 U.S.C. § 216(b).  More specifically, the court emphasized:

> There is no express statutory requirement that consents may only be filed after the court authorizes notice.  Moreover, given that, as a general rule, the statute of limitations runs until a claimant files a consent form, and given that a court later can strike consents if a basis for doing so is established, the court is reluctant to conclude that [S]ection 256(a) per se forbids the filing of consents until after the court authorizes notice.

*Wertheim*, 1993 WL 603552, at *8; *see also Melendez Cintron v. Hershey P.R., Inc.*, 363 F. Supp. 2d 10, 17 (D.P.R. 2005) (emphasizing that "there are no specific requirements concerning the time when a notice of consent should be filed under Section 16(b) of the FLSA").  The Court recognizes that this distinction is problematic; if evidence existed that Plaintiffs or their counsel had embarked on some type of subtle e-mail solicitation effort, telephone call campaign, or some other covertly-organized method to notify potential plaintiffs, *Woods* may indeed apply here.  However, lacking any such evidence, the Court is hard-pressed to strike the filed consent forms, considering the broad language of the FLSA addressing consents of opt-in plaintiffs. *See* 29 U.S.C. §§ 216(b), 256(b); *see generally Hoffman-LA Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 181 (1989) (declining to disturb district court's denial of defendant's request to invalidate

consents that were obtained and filed without court approval); *El v. Potter*, No. 01 Civ. 6125(RWS), 2004 WL 2793166, at *12 (S.D.N.Y. Dec. 6, 2004) (refraining from striking consent forms of opt-in plaintiffs based on defendant's assertion that they were improperly or illegally obtained).

Furthermore, as *Wertheim* hints, if the Court were to strike the filed consent forms, an equitable tolling dilemma with respect to the statute of limitations for these potential plaintiffs would likely develop, because the action is not commenced with respect to an opt-in plaintiff until his or her consent is filed. *See Wertheim*, 1993 WL 603552, at *8; *Camp v. Progressive Corp.*, No. Civ. A. 01-2680, Civ. A. 03-2507, 2004 WL 2149079, at *15 n.7 (E.D. La. Sep. 23, 2004) (commenting that where the court did not allow the filing of consents until the action was certified, "the court would have to address whether to apply equitable tolling at least during the pendency of the action to the limitations period of any opt-in plaintiffs, who had been prevented by the court's own action from filing their written consents").  Thus, considering that no written notices were distributed in the instant case and that striking the consent forms could bar certain opt-in plaintiffs' claims from a statute of limitations perspective, the Court declines to strike the filed consent forms.

However, perhaps a more convincing argument to strike the filed consent forms, an argument that Defendants never raise, rests in the actual language of the consent form itself.  The filed consent forms blatantly overstate the conditionally certified class by including (1) individuals who were employees of Defendants before April 1, 2002, and after December 31, 2003; (2) current and past employees of "Indiana Mentor/REM-Indiana, Inc.," who was previously dismissed from this suit; and (3) *all* employees of Defendants, not just Fort Wayne

6

12-7 Direct Care Staff. (*See, e.g.,* Docket # 33.)  Thus, many of the individuals with consent forms on the record may not be similarly situated to the Plaintiffs and may not fall within the class conditionally certified by Judge Lee.

To mitigate this concern and yet prevent the equitable estoppel dilemma discussed *supra* that striking the consent forms would likely create, the Court will order Plaintiffs to timely file amended consent forms for each potential plaintiff who currently has a consent form on the record, using the consent form ultimately approved by the Court pursuant to Judge Lee's August 31 Order. *See generally Hoffman-LA Roche*, 493 U.S. at 170-71 ("a court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way"); *Woods*, 686 F.2d at 580 (observing that while authorization as a collective action carries a right in the representative plaintiff to notify potential plaintiffs, it also entails "a power in the district court to place appropriate conditions in the exercise of that right"); *Wertheim*, 1993 WL 603552, at *8 (refraining from striking consent forms based on technical defects when the forms "clearly indicate[d] consent by the opt-ins to join [the] lawsuit").  Each filed amended consent form will be deemed to relate back to the date the respective opt-in plaintiff's original consent was filed and will confirm to the Court that such opt-in plaintiff falls within the description of the conditionally certified class.  Any filed consent form for which an amended consent form is not timely filed will be subject to being stricken. *See Wertheim*, 1993 WL 603552, at *7 (striking consent forms of employees who failed to satisfy the criteria of the certified class).

Therefore, for the foregoing reasons, the Defendants' motion to strike (Docket # 57) is hereby DENIED.  Notwithstanding the foregoing, Plaintiffs are ORDERED to file an amended

consent form for each potential class member who currently has a consent form on the record; such amended consent form will be deemed effective as of the date the corresponding original consent form was filed.  Any filed consent form of a potential plaintiff who fails to timely file an amended consent form pursuant to this Order is subject to being stricken.

    SO ORDERED.

    Enter for this 4th day of October, 2005.

                                                       /S/ Roger B. Cosbey
                                                       Roger B. Cosbey
                                                       United States Magistrate Judge